UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN LOGERFO,<br><br>                Plaintiff,<br><br>     v.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, JPMORGAN CHASE BANK, N.A., and THE CHASE MANHATTAN BANK, N.A.,<br><br>                Defendants. | **MEMORANDUM & ORDER**<br>19-CV-02019 (HG) (AYS) |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, JPMORGAN CHASE BANK, N.A., and THE CHASE MANHATTAN BANK, N.A.,<br><br>                Third-Party Plaintiffs,<br><br>     v.<br><br>UNITY ELECTRIC CO., INC., UNI-DATA COMMUNICATIONS, INC., UNITY ELECTRIC LLC, UNITY INTERNATIONAL GROUP, INC., ENGIE NORTH AMERICA INC., ENGIE NYC LLC, and JONES LANG LASALLE AMERICAS, INC.,<br><br>                Third-Party Defendants. | |

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff was injured while working at a building owned by JPMorgan Chase Bank, N.A.

("JPM") and has asserted claims against JPM for violations of the New York Labor Law

("NYLL") and for common law negligence.  JPM has moved for summary judgment dismissing

those claims.  JPM has also asserted claims for indemnification against Third-Party Defendants

Jones Lang Lasalle, the property manager for the building where Plaintiff was injured, and Unity Electric Co., Inc., the subcontractor that employed Plaintiff.  JPM seeks summary judgment on those indemnification claims, and Jones Lang Lasalle has filed its own motion for summary judgment seeking to dismiss JPM's indemnification claims.  For the reasons set forth below, the Court grants JPM's motion for summary judgment dismissing Plaintiff's claims.  Since the Court has concluded that JPM is not liable to Plaintiff, and the parties have invoked only the Court's supplemental jurisdiction over the indemnification claims in the third-party action, the Court declines to exercise supplemental jurisdiction over those claims and dismisses them without prejudice.

## FACTUAL BACKGROUND

Plaintiff was injured while working in a building owned by JPM.  ECF No. 68 ¶¶ 2–3.  Plaintiff is an electrical foreman who was not employed by JPM but was instead employed by Unity.  *Id.* ¶ 1.  Jones Lang Lasalle was responsible for providing "facilities management and property services" at the building where Plaintiff was injured pursuant to a Master Services Agreement between JPM and Jones Lang Lasalle.  ECF No. 66-14 at 10.  Jones Lang Lasalle hired Unity as a subcontractor to perform some of that work and entered into a Service Contractor Agreement with Unity governing their relationship.  ECF No. 65-16.  Pursuant to that contract, Unity was responsible for ordinary repairs and preventative maintenance.  *Id.* at 12.

However, Unity was also working on a specific project at the same building, in addition to these general maintenance duties, which JPM refers to as a "Security Uplift," and which Plaintiff referred to as the "TR room card reader upgrade."  ECF No. 66-19 ¶ 16; Pls. Dep. at

21:10–20.[1]  That project involved making changes to various card readers necessary to access certain rooms throughout JPM's building and replacing them with different card readers.  Pls. Dep. at 23:2–17.  JPM had hired a separate general contractor to work on that project, non-party Structure Tone, Inc., not Jones Lang Lasalle.  ECF No. 66-17.  Structure Tone hired Unity as a subcontractor for the security card reader project and entered into an agreement with Unity that was separate from Unity's Service Contractor Agreement with Jones Lang Lasalle.  *Id.*

Plaintiff testified that, on the day he was injured, he came to work to find that Unity had received in his office a stack of invoices for "materials" that had been delivered the night before. Pls. Dep. at 27:13–24.  The boxes of materials had been delivered to a storage room that JPM had made available for Unity in JPM's building, which was next to Plaintiff's office.  *Id.* at 27:13–24, 79:6–80:10.  Plaintiff went to the storage room to inspect an approximately six-foot high stack of boxes, so that he could check them against the materials described in the invoices. *Id.* at 28:5–13, 28:22–29:1.  Plaintiff attempted to pull a box from the top of the stack, but the "heavy" box fell onto his right shoulder before falling to the floor.  *Id.*  Although Plaintiff felt "hurt" because of the incident, he continued to attempt to inspect the contents of the box, which had gotten "wedged between [a] big wire reel" and another "stack of boxes."  *Id.* at 28:5–18. Plaintiff tried to "yank" the wire reel "out of the way," so that he could inspect the contents of the box.  *Id.* at 28:14–21.  But while Plaintiff was pulling the wire reel, he felt "a pop sensation" in the same shoulder on which the box had previously fallen.  *Id.*  Nobody other than Plaintiff

---

[1]      Since the parties have filed three different motions for summary judgment, there are various filings on the Court's docket that contain excerpts of Plaintiff's deposition.  *See, e.g.*, ECF Nos. 64-8, 68-3, 75-1, 76-1.  For ease of reference, the Court will cite Plaintiff's deposition transcript as "Pls. Dep." and identify specific testimony using the page numbers from the deposition transcript, rather than the pagination that the Court's electronic filing system imprinted on the parties' excerpts of that transcript.

was in the room to witness the incident. *Id.* at 37:19–21. Plaintiff was later diagnosed with a tear in a muscle in his right shoulder. *Id.* at 40:3–22.

Plaintiff testified that all of the materials that had been sent in the boxes that he inventoried were related to the security card reader project even though the room where the boxes were stored also contained "years of material[s]" that were used for other projects on which Unity worked. Pls. Dep. at 27:13–24, 73:11–23. Specifically, the box that fell on Plaintiff contained "transformers," "door contacts," "computer cards," and "panel boxes." *Id.* at 72:11–18. JPM contends that the wire reel that Plaintiff was pulling when he heard his shoulder "pop" was kept in the storage room for Unity's general maintenance work and not for the card reader project. ECF No. 66-20 at 2. But the deposition testimony that JPM cites to as purported support for that assertion does not say anything about the purpose of the wire reel, and neither JPM nor any other party has presented the Court with testimony or other evidence identifying the purpose of the wire reel. *See, e.g.*, Pls. Dep. at 27:13–28:21, 34:1–21.

Plaintiff testified that he did not have any stepladders available to access tall stacks of boxes, but that he did have six- and eight-foot ladders available. Pls. Dep. at 29:5–22. However, he said that the storage room was too cluttered with boxes and other materials to unfold a ladder. *Id.* Plaintiff conceded that he had never, before his accident, raised concerns about the storage room being too cluttered or in need of clearing out with JPM, Jones Lang Lasalle, or anyone else. *Id.* at 78:21–79:5. He also could not recall another accident ever occurring in the storage room. *Id.* at 91:19–22. But Plaintiff said that Unity employees had "asked a lot," in connection with other projects, about getting additional storage rooms in the building, and that JPM sometimes provided additional rooms. *Id.* at 83:5–12. Plaintiff further testified that the clutter was caused, at least in part, by JPM because whenever Unity completed a project in the building, JPM

insisted that Unity move all of the project materials out of the areas where work was being performed, and that the storage room where Plaintiff was injured was the only place to store them. *Id.* at 82:17–83:4. Plaintiff also insisted that JPM employees had the authority to enter and clean out the storage room if they wanted to. *Id.* at 79:6–9. Although Unity had placed a padlock on the storage room, building engineers employed by JPM had the combination necessary to open the lock and could enter the room. *Id.* at 79:10–16.

Plaintiff commenced this action by asserting claims against only JPM for common law negligence and violations of Sections 200, 240(1), and 241(6) of the NYLL. ECF No. 1. JPM filed a third-party complaint asserting claims for indemnification and contribution against Jones Lang Lasalle, Unity, and several companies affiliated with Unity, asserting claims for indemnification and contribution. ECF No. 36. Jones Lang Lasalle and Unity each responded by asserting counterclaims for indemnification and contribution against JPM. ECF Nos. 38, 45. Jones Lang Lasalle and Unity each also asserted cross-claims for contribution and indemnification against each other. *Id.*

JPM has moved for summary judgment dismissing all of Plaintiff's claims and has also moved for summary judgment on its own claims for indemnification against Jones Lang Lasalle and Unity. ECF Nos. 65, 66. Plaintiff, Jones Lang Lasalle, and Unity have each opposed the respective motions for summary judgment against them. ECF Nos. 68, 70, 71. However, only Jones Lang Lasalle has filed its own motion for summary judgment seeking the dismissal of the indemnification claims against it, including JPM's indemnification claim. ECF No. 64. Plaintiff has not moved for summary judgment on his claims against JPM, and Unity has not moved for summary judgment either to dismiss JPM's claims or to seek a finding that it has prevailed on its own indemnification-related cross-claims or counterclaims.

5

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[2] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

When deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a party must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing claims).

---

[2]    Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

**DISCUSSION**

The Court grants JPM's motion for summary judgment in full and dismisses all of Plaintiff's claims against it.  The Court therefore does not need to reach JPM's, Jones Lang Lasalle's, and Unity's claims for indemnification against each other, and it declines to exercise supplemental jurisdiction over those claims.

**I.    Each of Plaintiff's Claims Against JPM Fails as a Matter of Law**

Plaintiff has asserted claims against JPM pursuant to three different provisions of the NYLL:  Sections 200, 240(1), and 241(6).  Plaintiff's claim pursuant to Section 240(1) fails because his injury was not caused by an elevation-related risk to which that section applies. Plaintiff's claim pursuant to Section 241(6) fails because it must be premised on a violation of New York's Industrial Code, and Plaintiff cannot prove as a matter of law that JPM violated any provision of the industrial code.  Finally, Plaintiff's claim pursuant to Section 200 and his common law negligence claim fail because Plaintiff cannot demonstrate that JPM was on notice of the allegedly unsafe working conditions and, therefore, cannot prove that JPM was negligent.

*A.    Plaintiff's NYLL § 240(1) Claim*

Section 240(1) of the NYLL requires property "owners" who contract for work related to "altering . . . a building or structure" to "furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."  NYLL § 240(1).  "New York Labor Law § 240(1) imposes a nondelegable duty upon owners and general contractors and their agents to provide safety devices necessary to protect workers from risks inherent in elevated work sites." *Quishpe v. Urban Atelier Grp., LLC*, No. 21-cv-2723, 2023 WL 5625307, at *5 (E.D.N.Y. Aug. 31, 2023).  Since the duty is nondelegable, a plaintiff need not prove a defendant's negligence,

and a plaintiff's own comparative negligence "does not furnish a defense" unless the defendant

can prove that the "plaintiff [wa]s the sole proximate cause of his or her own injuries." *Id.*

JPM unsuccessfully argues that Plaintiff was not engaged in construction work that

brings him within the purview of NYLL Section 240(1) because Plaintiff was merely unloading

boxes and not installing security card readers in JPM's building when he was injured.  ECF No.

66-20 at 10–11, 12–13, 15–16.  However, when considering whether a plaintiff was altering a

structure in a manner that brings his work within the scope of Section 240(1), New York courts

do not "limit [their] analysis of [a] plaintiff's activity to the moment of his injury." *Saint v.*

*Syracuse Supply Co.*, 30 N.E.3d 872, 876 (N.Y. 2015).  In other words, courts do not "isolate the

moment of injury and ignore the general context of the work." *Id.* at 877.  Section 240(1) applies

to a plaintiff's work if the plaintiff is "performing duties ancillary" to activities that fall within

the scope of the statute—meaning duties that are "an integral part of" a construction project. *Id.*

Whether Plaintiff was performing construction work at the time of his injury, therefore, depends

on whether Unity's broader security card reader project is considered construction work.

The card reader project entailed a sufficiently significant alteration to JPM's building to

bring Plaintiff's work within the scope of Section 240(1).  The New York Court of Appeals has

held that "allowing every change in a structure to qualify as an alteration gives the statute [*i.e.*,

NYLL § 240(1)] too broad a reach." *Joblon v. Solow*, 695 N.E.2d 237, 241 (N.Y. 1998).

Accordingly, "the term 'altering' in section 240(1) requires making a *significant* physical change

to the configuration or composition of the building or structure." *Saint*, 30 N.E.3d at 877

(emphasis in original).  "[W]ork being performed that affects a crucial building system" qualifies

as an alteration even if the system does not "affect[] the building's structural integrity."

*Mananghaya v. Bronx-Lebanon Hosp. Ctr.*, 83 N.Y.S.3d 444, 451 (1st Dep't 2018) (holding that

"significant change to . . . hospital's air conditioning system" fell within scope of the statute). The upgrade of the security system in JPM's building was significant enough to bring Plaintiff's work within the scope of Section 240(1) because the New York Court of Appeals has held that a similar electrical upgrade fell within the statute's scope. *Weininger v. Hagedorn & Co.*, 695 N.E.2d 709, 710 (N.Y. 1998) (holding that "running computer and telephone cable" throughout office building was considered sufficiently signification alteration to building); *see also Prats v. Port Auth. of N.Y. & N.J.*, 800 N.E.2d 351, 353–54 (N.Y. 2003) (holding that plaintiff's work inspecting and adjusting air conditioner units throughout office building were alterations that fell within the purview of NYLL § 240(1)).

Plaintiff's Section 240(1) claim nevertheless fails because he cannot show that his injury resulted from the type of elevation-related risk that Section 240(1) was designed to protect against. "Not every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240(1)." *Narducci v. Manhasset Bay Assocs.*, 750 N.E.2d 1085, 1089 (N.Y. 2001). A plaintiff must show that he "suffered an injury as the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." *Soto v. J. Crew Inc.*, 998 N.E.2d 1045, 1047 (N.Y. 2013). Accordingly, even if a plaintiff has been "injured by the operation of gravity," a claim based on Section 240(1) will still fail if the gravity-related injury did not involve "a physically significant elevation differential or an extraordinary elevation risk encompassed by the statute." *Buono v. AvalonBay Cmty.*, No. 19-cv-5413, 2021 WL 51524, at *3 (S.D.N.Y. Jan. 6, 2021) (granting summary judgment dismissing Section 240(1) claim based on six-foot ladder that tipped over and fell on plaintiff).

The event that led to Plaintiff's injury—a box falling from a height of approximately six feet—does not satisfy this criterion. The New York Court of Appeals has, on multiple occasions, rejected Section 240(1) claims based on plaintiffs or objects that fell from similarly modest heights. *Soto*, 998 N.E.2d at 1049 (holding that plaintiff's "dusting of a six-foot-high display shelf" was not a task that fell within the scope of NYLL § 240(1)); *Broggy v. Rockefeller Grp., Inc.*, 870 N.E.2d 1144, 1147–48 (N.Y. 2007) (affirming grant of summary judgment in favor of defendant "because the evidence in this record demonstrates as a matter of law that" plaintiff who stood on, and fell from, desk while cleaning interior windows "did not . . . need protection from the effects of gravity"); *Toefer v. Long Island R.R.*, 828 N.E.2d 614, 618 (N.Y. 2005) (holding that "[a] four-to-five-foot descent from a flatbed trailer or similar surface does not present the sort of elevation-related risk that triggers Labor Law § 240(1)'s coverage"). Other courts have followed suit and held that NYLL § 240(1) does not apply to falls from heights similar to the stack of boxes that Plaintiff was working with. *Walter v. CSX Transp., Inc.*, No. 22-1254-cv, 2023 WL 4044113, at *2 (2d Cir. June 16, 2023) (affirming summary judgment dismissing NYLL § 240(1) claim because "[t]he task of unloading a truck is not an elevation-related risk simply because there is a difference in elevation between the ground and the truck bed"); *Decker v. C&S Wholesale Grocers, Inc.*, 786 N.Y.S.2d 328, 329 (2d Dep't 2004) (denying plaintiff's motion to amend complaint to add NYLL § 240(1) claim based on injury caused by a collapsed "stack of boxes" because "plaintiff was not engaged in a covered activity at the time of the accident").

In reaching the conclusion that Plaintiff's injury did not occur because of a significant elevation differential, the Court is not relying on JPM's argument that Plaintiff was injured because of his attempt to pull a wire reel located at ground level and not because of the falling

box.  ECF No. 66-20 at 12–13.  Whether Plaintiff's injury was caused solely by pulling on the

wire reel or prompted by the falling box and then completed by Plaintiff's efforts to pull the wire

reel is an issue of fact that the Court cannot resolve at the summary judgment stage.  Resolving

this dispute would be particularly inappropriate because the parties have not submitted medical

opinion evidence addressing the cause of Plaintiff's injury.  However, even if Plaintiff's injury

was caused solely by the falling box, Plaintiff's Section 240(1) claim fails for the reasons

explained above.

B.     *Plaintiff's NYLL § 241(6) Claim*

Section 241(6) of the NYLL requires property owners to ensure that "all areas in which . .

. work is being performed" are "so constructed, shored, equipped, guarded, arranged, operated

and conducted as to provide reasonable and adequate protection and safety to the persons

employed therein or lawfully frequenting such places."  NYLL § 241(6).  Although the text of

Section 241(6) addresses only work related to "construction, excavation or demolition," *see id.*,

the New York Court of Appeals has interpreted the statute's definition of the term "construction"

to include "alteration[s]" that would fall within the scope of Section 240(1), *see Joblon*, 695

N.E.2d at 242.

As with a claim under Section 240(1), Section 241(6) imposes a "nondelegable" duty on

a building's owner, so a plaintiff need not demonstrate the owner's negligence or even show that

the owner "exercised supervision or control over [his] worksite."  *Quishpe*, 2023 WL 5625307,

at *4.  However, since Section 241(6) does not define an applicable standard for "reasonable and

adequate protection and safety," "[t]o establish liability under NYLL section 241(6), a plaintiff

must demonstrate that his injuries were proximately caused by a violation of an applicable New

York Industrial Code provision."  *Buono*, 2021 WL 51524, at *3; *see also Quishpe*, 2023 WL

5625307, at *4 ("To establish liability under § 241(6), a plaintiff must specifically plead and

prove the violation of an applicable Industrial Code regulation.").  Here, Plaintiff has relied on Industrial Code Section 23-2.1(a)(1).  ECF No. 68-1 at 13–15.

Plaintiff cannot demonstrate that Industrial Code Section 23-2.1(a)(1) applies to the course of events that led to his injury.  That provision requires:  "All building materials shall be stored in a safe and orderly manner.  Material piles shall be stable under all conditions and so located that they do not obstruct any passageway, walkway, stairway or other thoroughfare."  12 N.Y.C.R.R. § 23-2.1(a)(1).  The first sentence of this provision is a general statement about the storage of materials that does not specify the specific locations to which the provision applies. *Id.*  However, New York courts have determined, based on the second sentence, that the provision does not apply in "an open work area," and instead applies only "in a passageway, hallway, stairway, or other thoroughfare."  *Ormsbee v. Time Warner Realty Inc.*, 166 N.Y.S.3d 130, 131 (1st Dep't 2022) (affirming summary judgment dismissing plaintiff's claims to the extent they were based on Industrial Code Section 23-2.1(a)(1)); *Wiley v. Marjam Supply Co., Inc.*, 87 N.Y.S.3d 675, 679 (3d Dep't 2018) (affirming summary judgment in favor of defendant because falling piece of "sheetrock was stored in the corner of a second-floor room and did not obstruct any passageway, walkway, stairway or other thoroughfare"); *Desena v. N. Shore Hebrew Academy*, 989 N.Y.S.2d 505, 510 (2d Dep't 2014) (granting summary judgment to defendant because "12 NYCRR 23–2.1 [wa]s not applicable" to plaintiff's claims since "[t]he accident occurred in an open area at a worksite, not a passageway, walkway, stairway or other thoroughfare").  As in these other cases, Plaintiff's Section 241(6) claim fails because the storage room in which he was injured is not the type of setting covered by Industrial Code Section 23-2.1(a)(1).  *Buono*, 2021 WL 51524, at *4 (granting summary judgment in favor of defendant

because Industrial Code Section 23-2.1(a)(1) "d[id] not apply to the site of [p]laintiff's

accident").

JPM said in its opening brief that Plaintiff had previously indicated that JPM can be held

liable for violating NYLL § 241(6) because of violations of New York Industrial Code Sections

23-1.7(e)(2) and 23-1.5, which relate to "general hazards" and the "[g]eneral responsibility of

employers," respectively.  ECF No. 66-20 at 13, 16; *see* 12 N.Y.C.R.R. §§ 23-1.5, 23-1.7.  JPM

argued that Plaintiff cannot prove those violations as a matter of law, but in Plaintiff's opposition

brief, he addressed only JPM's arguments about Industrial Code Section 23-2.1(a)(1), without

making any arguments about the other sections addressed by JPM.  ECF No. 66-20 at 13–16;

ECF No. 68-1 at 13–15.  Plaintiff has, therefore, waived any claim based on a violation of

Industrial Code Sections 23-1.7(e)(2) and 23-1.5.  When a party represented by counsel files an

opposition to a motion for summary judgment that addresses some claims but not others, as

Plaintiff has done here, a district court may "infer from [the] party's partial opposition that

relevant claims or defenses that are not defended have been abandoned."  *Jackson v. Fed. Exp.*,

766 F.3d 189, 198 (2d Cir. 2014) (holding that district court properly treated plaintiff as having

waived certain claims).

Plaintiff's Section 241(6) claims based on these Industrial Code provisions would fail

even if they were not waived.  Industrial Code Section 23-1.7(e)(2) is plainly inapplicable

because it "applies where a plaintiff is injured because of a tripping hazard," and Plaintiff was

indisputably not injured by a tripping hazard.  *Buono*, 2021 WL 51524, at *3 (granting motion

for summary judgment dismissing Section 241(6) claim based on alleged violation of Industrial

Code Section 23-1.7(e)(2)).  Industrial Code Section 23-1.5 describes the "[g]eneral

responsibility of employers."  12 N.Y.C.R.R. § 23-1.5.  But the New York Court of Appeals has

explained that "to state a claim under section 241(6), [a] plaintiff must allege that defendant violated an Industrial Code regulation that sets forth a specific standard of conduct and [is] not simply a recitation of common-law safety principles." *Toussaint v. Port Auth. of N.Y. & N.J.*, 188 N.E.3d 571, 574 (N.Y. 2022); *see also Ross v. Curtis-Palmer Hydro-Elec. Co.*, 618 N.E.2d 82, 87–88 (N.Y. 1993) (holding that a Section 241(6) violation cannot be premised on an Industrial Code provision that contains "a reiteration of common-law standards"). "[S]ubsections (a) and (b) of Industrial Code 23-1.5 are nothing more than general safety provisions" and, therefore, "do not provide a basis for Plaintiff's § 241(6) claim." *Csikos v. S.M. Constr. & Contracting, Inc.*, No. 18-cv-9598, 2021 WL 5771921, at *5 (S.D.N.Y. Dec. 3, 2021) (granting summary judgment in favor of defendant on NYLL § 241(6) claim).  To the extent subsection (c) contains sufficiently specific requirements, it is "inapplicable" because "it governs the condition of equipment and safeguards," yet Plaintiff does not allege that his injury occurred because any safety equipment, or any of the materials in the box that fell on him, were in poor condition.  *Csikos*, 2021 WL 5771921, at *5

### C.    Plaintiff's NYLL § 200 and Negligence Claims

NYLL Section 200 requires that:  (i) all areas of a workplace "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places"; and (ii) "[a]ll machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons." NYLL § 200(1).  The statute is a "codification of the common-law duty of property owners and general contractors to provide workers with a safe place to work," and "liability under the statute is governed by common-law negligence principles."  *Quishpe*, 2023 WL 5625307, at *3.

14

Therefore, "[c]ourts generally analyze claims brought under both § 200 and the common law simultaneously." *Buono*, 2021 WL 51524, at *4.

"Cases involving Labor Law § 200 fall into two broad categories:  namely, those where workers are injured as a result of dangerous or defective premises conditions at a worksite, and those involving the manner in which the work is performed." *Ortega v. Puccia*, 866 N.Y.S.2d 323, 329 (2d Dep't 2008).  Plaintiff's claim is based on the former theory because he contends that his injury was caused by the cluttered conditions in the storage room.  ECF No. 68-1 at 17–21.  "Where a premises condition is at issue, property owners may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident." *Ortega*, 866 N.Y.S.2d at 329.

Plaintiff's Section 200 claim fails because he cannot demonstrate that JPM caused or had notice of the cluttered conditions.  JPM may have assigned Unity the specific storage space where Plaintiff's injury occurred and approved orders of project materials, but Plaintiff testified that Unity employees unloaded the boxes of materials and arranged them in the manner that caused Plaintiff's injury.  Pls. Dep. at 27:13–24, 70:13–71:10.  Although Unity had previously asked JPM for additional storage space, Plaintiff conceded that neither he, nor anyone else he knew of, raised any complaints with JPM about the storage space being too cluttered.  *Id.* at 78:21–79:5, 85:5–12.  Based on these events, JPM cannot be held responsible for the conditions that caused Plaintiff's injury because it did not "have actual or constructive notice of the allegedly dangerous condition." *See Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 330 (S.D.N.Y. 2011) (granting summary judgment in favor of building owner on plaintiff's Section 200 and common law negligence claims).

15

## II.     The Court Declines to Exercise Supplemental Jurisdiction Over the Third-Party Claims

The Court has diversity jurisdiction over the claims in the first-party action but merely supplemental jurisdiction over the claims in the third-party action.  JPM removed Plaintiff's claims against it from state court based on diversity jurisdiction.  ECF No. 1.  The parties in the first-party action have diverse citizenship because Plaintiff is a citizen of New York, and JPM, as a national banking association, is a citizen only of Ohio since its articles of association designate an office in Ohio as its main office.  *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016) (holding that "a national bank is a citizen only of the state listed in its articles of association as its main office").  JPM has invoked only supplemental jurisdiction over its claims for indemnification against Jones Lang Lasalle and Unity.  ECF No. 36 ¶ 9.  Additionally, JPM's third-party complaint does not plead facts sufficient to invoke the Court's diversity jurisdiction over its third-party claims because several of the third-party defendants are limited liability companies affiliated with Unity, and JPM has not pled the states of citizenship of their members.  *Id.* ¶¶ 3–8; *see Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 615 (2d Cir. 2019) (holding that a limited liability company "takes the citizenship of all of its members").  Neither Jones Lang Lasalle nor Unity have asserted in their answers to JPM's third-party complaint that diversity jurisdiction exists as a basis for exercising jurisdiction over their counter-claims against JPM or their cross-claims against each other, and their answers do not allege facts sufficient to invoke diversity jurisdiction.  ECF Nos. 38, 45.

The Court could exercise supplemental jurisdiction over the claims in the third-party action, and they were properly included in the case up until this point.  Subject to certain exceptions not applicable here, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). Since the third-party claims depend on an assessment of the events leading up to Plaintiff's injury, they satisfy this standard of relatedness.  *See Viacom Int'l, Inc. v. Kearny*, 212 F.3d 721, 727–28 (2d Cir. 2000) (holding that district court had supplemental jurisdiction over third- and fourth-party claims between non-diverse parties).  The Court may, therefore, exercise supplemental jurisdiction over the claims in the third-party action, so long as "the parties in the first-party action[] are themselves diverse," which they are for the reasons described above. *Genger v. Genger*, 771 F. App'x 99, 100 (2d Cir. 2019).

But the Court is not required to exercise supplemental jurisdiction.  A court "may decline to exercise supplemental jurisdiction" under various different circumstances, including when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). Ordinarily, a court's resolution of all the claims over which it has original jurisdiction before trial "generally points to declining to exercise supplemental jurisdiction" over any remaining claims. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).  Applying that principle favoring dismissal makes sense here.  Since the Court has dismissed all of Plaintiff's claims against JPM, thereby eliminating JPM's potential liability, there is little reason to exercise supplemental jurisdiction over the indemnification claims in the third-party action.  "Claims for indemnification do not generally ripen until a judgment in the underlying action is paid." *Cucchiara v. Hollingsworth*, No. 15-cv-314, 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016) (declining to exercise supplemental jurisdiction over defendant's indemnification claim against third party after granting summary judgment dismissing plaintiff's claims); *Choi v. Hoyt De Leon Corp.*, No. 19-cv-4445, 2023 WL 5671993, at *6 (E.D.N.Y. Sept. 1, 2023) (reiterating

same ripeness principle and denying summary judgment on third-party indemnification claims). The court therefore dismisses the third-party claims without prejudice because it declines to exercise supplemental jurisdiction over them.  *Piotrowski v. Rocky Point Union Free Sch. Dist.*, No. 18-cv-6262, 2023 WL 2710341, at *14 (E.D.N.Y. Mar. 30, 2023) (declining to exercise supplemental jurisdiction over indemnification claims between defendants after granting summary judgment dismissing all of plaintiff's claims).

## CONCLUSION

For the reasons set forth above, the Court GRANTS in full JPM's motion for summary judgment against Plaintiff and dismisses all of Plaintiff's claims against JPM with prejudice. ECF No. 66.  The Court declines to exercise supplemental jurisdiction over the indemnification and contribution claims that JPM, Jones Lang Lasalle, and Unity have asserted against each other in the third-party action and dismisses the claims in the third-party action without prejudice.  The Court therefore DENIES as moot JPM's motion for summary judgment seeking indemnification against Jones Lang Lasalle and Jones Lang Lasalle's motion for summary judgment seeking to dismiss on the merits JPM's indemnification claims against it.  ECF Nos. 64, 65.  The Clerk of Court is respectfully directed to enter judgment dismissing with prejudice Plaintiff's claims against JPM and dismissing without prejudice the claims asserted in the third-party action and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        December 27, 2023